UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

|  |  |  |
|---|---|---|
| DEAN FOODS COMPANY, | ) | CASE NO.5:10MC94 |
|  | ) |  |
| MOVANT, | ) | JUDGE SARA LIOI |
|  | ) |  |
| vs. | ) |  |
|  | ) | OPINION & ORDER |
|  | ) |  |
| SMITH DAIRY PRODUCTS CO., | ) |  |
|  | ) |  |
| RESPONDENT. | ) |  |

This matter is before the Court upon the motion of Movant Dean Food Company (Movant or Dean Foods) to compel Respondent Smith Dairy Products Company (Respondent or Smith Dairy) to produce documents in compliance with the subpoena duces tecum served upon Smith Dairy on October 11, 2010 in *United States of America, et al. v. Dean Foods Co.*, Civ No. 10-00059 (E.D. Wis.). (Doc. No. 1.) Smith Dairy opposes the motion (Doc. No. 5), and Dean Foods has filed a reply. (Doc. No. 7.) For the reasons stated below, the motion to compel is DENIED.

**Background**

The instant miscellaneous action arises out of an antitrust lawsuit brought by the United States of America and the States of Wisconsin, Illinois, and Michigan in a case pending in the Eastern District of Wisconsin. Specifically, the United States and the participating States challenge Dean Food's April 1, 2009 acquisition of Foremost Farms USA. (Doc. No. 1-2, Compl. at ¶ 1.) According to the Complaint, the acquisition violates

Section 7 of the Clayton Act, 15 U.S.C. § 18, because "the effect of such acquisition may be substantially to lessen competition." 15 U.S.C. § 18. (*Id.*)

For purposes of the underlying action, Dean Foods produces and sells milk to schools and school districts in the relevant market covering the State of Wisconsin and the Upper Peninsula of Michigan (the "UP"). It also sells "fluid milk," or raw milk that has been processed for human consumption, in the relevant market covering Wisconsin, the UP, and northeastern Illinois. (*Id.* at ¶¶ 2 and 12.) Fluid milk "does not include extended shelf life milk, ultra high temperature milk or aseptic milk." (*Id.* at ¶ 12.)

The Complaint explains, and Dean Foods does not deny, that the limited shelf life and high cost of transporting fluid milk "results in most customers purchasing fluid milk from nearby processing plants." (*Id.* at ¶ 15.) As a result, it is alleged that "more than 90 percent of the milk sold to customers in Wisconsin and the UP traveled less than 150 miles from the plant in which it was processed." (*Id.*)

Foremost Farms USA "is a dairy cooperative owned by approximately 2,300 dairy farms located in seven states, including Wisconsin." (*Id.* at ¶ 1.) The Complaint alleges that, "in recent years, Dean and Foremost have been the first and fourth largest sellers [respectively] of school milk and fluid milk in Wisconsin, the UP, and northeastern Illinois." (*Id.* at ¶ 3.)

According to the plaintiffs in the underlying action, the acquisition will result in anticompetitive unilateral effects by eliminating the head-to-head competition of two of the major milk processors in the relevant market areas, and the facilitation of anticompetitive coordination. (*Id.* at ¶¶ 35 and ¶42.) The plaintiffs seek, among other things, a decree that the acquisition violations Section 7 of the Clayton Act, and a

2

permanent injunction prohibiting Dean Food's further ownership and operation of the assets acquired as part of the acquisition of Foremost Farms USA.

Respondent Smith Dairy, a non-party to the underlying action, is also a producer and supplier of fluid milk. Dean Foods is one of Smith Dairy's largest competitors. (Doc. No. 5-1, Declaration of Stephen Hines at ¶ 3.) On October 11, 2010, Dean Foods issued a subpoena in this judicial district[1] to Smith Dairy commanding it to produce for inspection documents relating to any plants owned or operated by Smith Dairy in Illinois, Indiana, Kansas, Kentucky, Michigan, Minnesota, Missouri, Nebraska, North Dakota, South Dakota, and Wisconsin; documentation showing production of milk for these identified plants; distribution records; documents showing all customers serviced by these plants; documents showing attempts to bid for customers in Wisconsin, the UP and northern Illinois; documents showing assets used to transport fluid milk from its facilities; documents showing "potential or actual competition with Dean Foods;" and any documents in Smith Dairy's possession relating to the acquisition of Foremost Farms USA by Dean Foods. (Doc. No. 1-3, Subpoena.) Counsel for Smith Dairy lodged objections to the subpoena via a letter dated October 25, 2010. The present motion to compel followed.

---

[1] Because the subpoena issued from the Northern District of Ohio, the Court has jurisdiction over the present action. *WM High Yield v. O'Hanlon*, 460 F. Supp. 2d 891, 893 (S.D. Ind. 2006) ("a court sitting in the district where the subpoena was issued and where the responsive documents are located is the 'proper forum to rule on a motion to enforce the subpoena duces tecum'") (quoting *Dryer v. GACS Inc.*, 204 F.R.D. 120, 122 (N.D. Ind. 2001)); 9A Charles A Wright and Arthur R. Miller, *Federal Practice and Procedure* § 2463.1 (3d ed. 2008) (Rule 45 "[m]akes it clear that motions to quash, modify, or condition the subpoena are to be made in the district in which the subpoena issued.")

**Law Relating to Subpoenas**

Rule 26(b) of the Federal Rules of Civil Procedure provides that "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense[.]" Fed. R. Civ. P. 26(b)(1). "The scope of examination permitted under Rule 26(b) is broader than that permitted at trial. The test is whether the line of interrogation is reasonably calculated to lead to the discovery of admissible evidence." *Lewis v. ACB Business Servs.*, 135 F.3d 389, 402 (6th Cir. 1998) (quoting *Mellon v. Cooper-Jarrett, Inc.*, 424 F.2d 499, 500-01 (6th Cir. 1970)).

Rule 45 governs the issuance of subpoenas, and provides that a person commanded to produce documents pursuant to a subpoena may serve an objection prior to the deadline specified in the subpoena or 14 days after the subpoena is served. Fed. R. Civ. P. 45(c)(2)(B) and (C). Rule 45(c)(3)(B) and (C) states that if a subpoena requires disclosure of a "trade secret or other confidential research, development, or commercial information" the issuing court "may […] quash or modify the subpoena" or, if the party in whose behalf the subpoena is issued shows a "substantial need for the testimony or material that cannot be otherwise met without undue hardship" and "ensures that the subpoenaed person will be reasonably compensated," the court may "order appearance or production under specified conditions."

Rule 45 also protects against the imposition of an "undue burden." Fed. R. Civ. P. 45(c)(3)(A)(iii), (iv). "Whether a subpoena imposes an 'undue burden' upon a witness is a case specific inquiry that turns on 'such factors as relevance, the need of the party for the documents, the breadth of the document request, the time period covered by it, the particularity with which the documents are described and the burden imposed.'"

*American Electric Power Co., Inc. v. United States*, 191 F.R.D. 132, 136 (S.D. Ohio 1999) (quoting *Concord Boat Corp. v. Brunswick Corp.*, 169 F.R.D. 44, 53 (S.D.N.Y. 1996)). "Courts are required to balance the need for discovery against the burden imposed on the person ordered to produce documents, and the status of a person as a non-party is a factor that weighs against disclosure." *Id. See U.S. Monumental Life Ins. Co.*, 440 F.3d 729, 735 (6th Cir. 2006); *see also Katz v. Batavia Marine & Sporting Supplies*, 984 F.2d 422, 424 (Fed. Cir. 1993).

The party seeking discovery bears the burden of demonstrating relevance. *American Electric Power*, 191 F.R.D. at 136. "The determination of issues of burden and reasonableness is committed to the sound discretion of the trial court." *Concord Boat Corp.*, 169 F.R.D. at 49. *See also* 9A Wright & Miller, *Federal Practice & Procedure*, § 2463.

**Discussion**

Smith Dairy objects to the subpoena on the grounds that the documents it seeks are not relevant, and that these documents contain highly confidential and proprietary information. With respect to relevance, Smith Dairy states that it only produces fluid milk at two plants, one located in Orrville, Ohio, and second plant located in Richmond Indiana. (Hines Decl. at ¶ 2.) Because fluid milk has an extremely limited shelf life—approximately 20 days—Smith Dairy is restricted in serving customers beyond a 150-mile radius. (*Id.* at ¶ 4.) Inasmuch as both plants are more than 150 miles outside of the market areas identified in the Complaint in the underlying action, Smith Dairy argues that information regarding these plants would be irrelevant. Smith Dairy also insists that the information sought by the subpoena, including the identity of

5

customers, production, and capacity, is highly sensitive and confidential, and its disclosure would not be adequately protected by the protective order in place in the underlying action.

In Support of its position that the requested documents contain confidential information, Smith Dairy offers the declaration of Stephen Hines, Vice President of Finance of Smith Dairy Products Company, who declares that:

> I have reviewed the subpoena sent by Dean Foods. Much of the information sought by Dean Foods is highly-confidential and its disclosure would greatly harm Smith's business. If a competitor were to discover the names and locations of Smith's customers, the competitor could target those customers in an attempt to supplant Smith as their supplier of fluid milk. Further, if a competitor were discover [sic] the capacity of Smith's plants that produce fluid milk and what capacity they are currently utilizing, the competitor could determine if Smith is vulnerable in any markets served by those plants.

(Hines Decl. at ¶ 5.) Dean Foods does not challenge Smith Dairy's contention that the documents are highly confidential, and even refers to the documents as "sensitive."[2] (Mot. at 5.) The Court finds, therefore, that Smith Dairy has demonstrated that many of the documents sought contain highly confidential information, and that the harm in producing these documents to a direct competitor would be substantial. *See American Standard Inc. v. Pfizer*, 828 F.2d 734, 741 (Fed. Cir. 1987) (Disclosure of sensitive business information to a competitor is "more harmful than disclosure to a noncompetitor."); *see also In re Vitamins Antitrust Litigation*, 267 F. Supp. 2d 738, 741-42 (S.D. Ohio 2003); *Mannington Mills, Inc. v. Armstrong World Indus., Inc.*, 206 F.R.D. 525, 531 (D. Del. 2002).

---

[2] In response to Smith Dairy's objection to producing what it views as high-confidential business information, Dean Foods merely states that "Smith's concerns regarding the confidentiality of its

Under Rule 45(c), Dean Foods may still obtain confidential information upon a showing of relevance and substantial need. *See Spartanburg Regional Healthcare Sys. v. Hillenbrand Industries, Inc.*, 2005 U.S. Dist. LEXIS 30594 (W.D. Mich. Aug. 24, 2005); *Mannington Mills*, 206 F.R.D. at 528-29; Fed. R. Civ. P. 26(b); Fed. R. Civ. P. 45(c)(3)(C)(i). Smith Dairy insists that the documents related to its fluid milk plants in Ohio and Indiana are not relevant to the underlying antitrust litigation because these plants are located too far from Wisconsin, the UP, and northeastern Illinois to ever service this market. Specifically, Smith Dairy's Indiana plant is located more than 250 miles from Chicago, one of the closest locations in the relevant market, and its Ohio plant is 400 miles away. (Hines Decl. at ¶ 2.)

Dean Foods concedes that Smith Dairy does not serve the relevant market area. Nonetheless, it suggests that the requested information is relevant to refute the complaint allegation that "[f]irms not currently serving [the alleged market] are unlikely to enter in the foreseeable future." (Compl. at ¶ 52; Mot. at 2.) Dean Foods explains:

> [T]o assess whether processors located outside the alleged market would begin shipping fluid milk into this region in response to a significant price increase, Dean must rely on information from processors relating to their operations and sales in other States to understand what effect the competitive churn in these States has on the capacity that may be available in Smith's plants for serving Plaintiffs' alleged geographic market. Moreover, along with demonstrating how far and in what volume processors are currently shipping fluid milk to their customers, information regarding customers located outside of the alleged relevant market is relevant to determining the competitive dynamic affecting processors located in the surrounding area and what it suggests about the capacity generally available for serving the alleged geographic market. Finally, while Smith does not currently serve the alleged relevant market, it may choose to do so were prices in this market to increase. Accordingly,

---

documents is fully and adequately addressed by the implementation of a strict protective order entered in the underlying action by the U.S. District Court for the Eastern District of Wisconsin." (Mot. at 5.)

7

> information pertaining to Smith's distribution practices is highly relevant to determining whether Smith could profitably serve these areas in response to a significant price increase should it choose to do so.

(Mot. at 4.)

Given the short shelf life of fluid milk, and the location of Smith Dairy's only fluid milk plants, there is absolutely no evidence that Smith Dairy could compete in the relevant market area. As such, the requests for information relating to these plants is not reasonably calculated to lead to the discovery of admissible evidence addressing the complaint allegation regarding the possibility that new firms will enter the fluid milk market in Wisconsin, northeastern Illinois, and the UP.

Even less relevant is Dean Food's desire to better understand the "competitive churn," or the ripple effect of sales on areas outside of Wisconsin, northeastern Illinois, and the UP. The effect that sales in areas beyond the relevant market area may have on sales in Wisconsin, northeastern Illinois, and the UP is too tenuous a connection to justify the production of documents from a competitor in an antitrust action; an action which is focused on a very specific geographic area.

This tenuous connection to the underlying action also prevents Dean Foods from demonstrating a substantial need for the requested information. Balanced against Dean Food's questionable need for the documents is the very real concern that Smith Dairy, a non-party to the underlying action, would be entrusting the confidentiality of its sensitive documents to a direct competitor who clearly does not represent its interests. *See in re Vitamins Antitrust Litigation*, 267 F. Supp. 2d at 741-42 (where direct competitor sought confidential information from non-party, this weighed against discovery). *See, e.g., In re Stewart Title Co*., 2009 U.S. Dist. LEXIS 51559, *5 (S.D. Tex.

8

June 17, 2009). While Dean Foods underscores the fact that there is a protective order in place in the antitrust action, this Court has no power over this order, and would be without authority to protect Smith Dairy's interests were it to be breached. *See in re Vitamins,* 267 F. Supp. 2d at 742. Thus, even if the documents requested were relevant, the Court would find that the potential harm to Smith Dairy would far exceed any possible benefit to Dean Foods. As such, the Court will not compel Smith Dairy to respond to Document Request Nos. 1-4, and 7.

Document Request Nos. 5, 6 and 8, requesting information regarding sales or potential sales in Wisconsin, northeastern Illinois, and the UP, are at least framed in such a way that they seek information regarding the relevant market area. Nonetheless, given the short shelf life of fluid milk, and the location of Smith Dairy's only fluid milk plants, it is unlikely that these requests would lead to the discovery of admissible evidence. Smith Dairy need not respond to these requests, as well.

Finally, Document Request No. 9 seeks all documents relating to any communications Smith Dairy may have had with any person or entity regarding Dean Food's April 1, 2009 acquisition of Foremost Farms. Again, in light of the fact that this acquisition would not appear to have any impact on Smith Dairy's operations, as Smith Dairy does not service Wisconsin, northeastern Illinois, or the UP, any communications Smith Dairy might have had regarding the acquisition would not be relevant to the underlying antitrust litigation. The Court will not compel a response to Document Request No. 9.

**Conclusion**

Accordingly, for all of the reasons set forth above, the motion to compel is DENIED in its entirety. This case is closed.

**IT IS SO ORDERED**.

Dated: December 30, 2010

                                            **HONORABLE SARA LIOI**
                                            **UNITED STATES DISTRICT JUDGE**